**STATE OF WEST VIRGINIA
SUPREME COURT OF APPEALS**

*In re* **C.W. and N.S.**

**No. 21-0052** (Preston County 19-JA-17 and 19-JA-18)

**MEMORANDUM DECISION**

Petitioner Mother M.S., by counsel Kristen Antolini, appeals the Circuit Court of Preston County's December 21, 2020, order terminating her parental and custodial rights to C.W. and N.S.[1] The West Virginia Department of Health and Human Resources ("DHHR"), by counsel S.L. Evans, filed a response in support of the circuit court's order. The guardian ad litem, Hilary M. Bright, filed a response on behalf of the children in support of the circuit court's order. On appeal, petitioner argues that the circuit court erred in terminating her parental rights when she substantially complied during her improvement period and without considering less-restrictive dispositional alternatives.

This Court has considered the parties' briefs and the record on appeal. The facts and legal arguments are adequately presented, and the decisional process would not be significantly aided by oral argument. Upon consideration of the standard of review, the briefs, and the record presented, the Court finds no substantial question of law and no prejudicial error. For these reasons, a memorandum decision affirming the circuit court's order is appropriate under Rule 21 of the Rules of Appellate Procedure.

In February of 2019, the DHHR filed an abuse and neglect petition alleging that after receiving multiple referrals related to petitioner's lack of supervision of the children, the DHHR implemented safety services in petitioner's home in August of 2018. Petitioner was provided adult life skills and parenting services, but the services were unsuccessful in remedying the issues, as evidenced by the fact that C.W. received first- and second-degree burns to a large portion of his back and posterior area on February 15, 2019. According to the DHHR, petitioner admitted that she did not seek medical attention for the child at the time and, instead, scheduled an appointment with the child's pediatrician on a later date. When petitioner took the child to the scheduled

---

[1]Consistent with our long-standing practice in cases with sensitive facts, we use initials where necessary to protect the identities of those involved in this case. *See In re K.H.*, 235 W. Va. 254, 773 S.E.2d 20 (2015); *Melinda H. v. William R. II*, 230 W. Va. 731, 742 S.E.2d 419 (2013); *State v. Brandon B.*, 218 W. Va. 324, 624 S.E.2d 761 (2005); *State v. Edward Charles L.*, 183 W. Va. 641, 398 S.E.2d 123 (1990).

1

appointment, the doctor recommended that C.W. be taken immediately to the University of Pittsburgh Medical Center Mercy Burn Unit to be evaluated. The doctor arranged transportation for this evaluation, but petitioner refused and indicated that she wanted a second opinion. During the DHHR's investigation, petitioner indicated that the child was burned when she was cooking hotdogs in boiling water and the water fell on the child while petitioner was not in the room. The child's maternal grandmother, however, reported that the child pulled the pot of water onto himself. The DHHR asserted that the location of the child's injuries refuted petitioner's and the grandmother's explanations, so the DHHR also alleged that petitioner failed to provide a credible explanation for the child's injuries. Based on this incident, the DHHR alleged that petitioner neglected the children's medical needs and failed to protect the children from the physical pain and emotional harm of severe injuries.

The petition further alleged that the case was one of aggravated circumstances, given that the father of C.W. previously had his parental rights to an older child involuntarily terminated. The DHHR also alleged that the parents[2] engaged in domestic violence in the children's presence and had a lengthy history of domestic violence. The petition referenced an incident in 2016 when the father was physically abusive to petitioner and threatened to burn the home down with the children inside. The father was charged with second-offense domestic battery as a result of this incident. The petition also alleged that petitioner sought a domestic violence protective order against the father, but failed to appear at a subsequent hearing, resulting in the matter being dismissed. Based on this conduct, the DHHR alleged that petitioner subjected the children to extreme neglect. Following the petition's filing, petitioner waived her right to a preliminary hearing and was directed to submit to drug screens.

Thereafter, petitioner submitted a voluntary stipulation to the allegations that she failed to provide adequate medical care for C.W. after the child was injured. The court accepted this stipulation at a June of 2019 adjudicatory hearing, during which it adjudicated petitioner as an abusing and/or neglectful parent in regard to both children. Petitioner then filed a motion for a post-adjudicatory improvement period, which the court granted at a hearing in July of 2019. The court later extended this improvement period at a hearing in October of 2019, despite the fact that the DHHR indicated that petitioner was only somewhat cooperative with services. Around this time, the DHHR noted concerns that petitioner remained in a relationship with C.W.'s father, as a service provider had recently witnessed the parents kissing. However, the parents denied this allegation.

During a hearing in February of 2020, the circuit court again extended petitioner's improvement period but was clear that petitioner was "going to have to show some progress" by participating in random drug screens, submitting to substance abuse treatment, and obtaining housing. However, on February 27, 2020, petitioner was charged criminally with first-offense shoplifting and obstruction related to an incident in which she admittedly shoplifted food from a convenience store and provided law enforcement with a false name during the investigation. The

---

[2]Because N.S.'s father is nonabusing, there is little need to reference him in this memorandum decision. Accordingly, petitioner and C.W.'s father will be referred to as "the parents."

following day, petitioner was charged with conspiracy to commit a felony, along with C.W.'s father, in relation to an incident in which petitioner accompanied C.W.'s father to a tow yard so that he could break into the facility, steal his vehicle, and recover stolen goods from the vehicle.

In July of 2020, the court held a dispositional hearing, during which the DHHR introduced evidence of petitioner's arrest for, and subsequent conviction of, both shoplifting and obstruction. The DHHR also introduced evidence that petitioner missed twenty-two drug screens during the proceedings and tested positive for opiates without a prescription and methamphetamine[3] on two different screens in November of 2019. The court then continued the dispositional hearing to September of 2020, at which point petitioner introduced evidence of her participation in services at the Rape and Domestic Violence Information Center. According to a witness, petitioner was compliant with service through the Center and was learning from them. The DHHR then presented testimony from a Child Protective Services ("CPS") supervisor who indicated that the DHHR's position was that petitioner's parental and custodial rights be terminated because of petitioner's inability to correct the conditions of abuse and neglect, despite extensive services. According to the supervisor, petitioner had received services since June of 2018, yet her understanding of the issues that necessitated the petition's filing had not improved. According to the supervisor, petitioner was dishonest with the multidisciplinary team and the court about her ongoing relationship with C.W.'s father, as she continued to deny that the two had contact yet was observed with him on several occasions and was ultimately arrested with him. Additionally, the supervisor testified to the mother's social media posts asserting that the DHHR "legally kidnapped" the children and her repeated assertions that she had done nothing wrong. Based on these assertions, the supervisor concluded that petitioner was not "fully grasping the concerns of the case and what she's actually needing to correct." Further, the supervisor testified that petitioner did not have her own housing. The circuit court also heard testimony from petitioner, C.W.'s father, petitioner's mother, and two individuals from Preston County Community Corrections. The court then continued the dispositional hearing for later in September of 2020.

Following that final hearing, the court found that petitioner had not been truthful during the proceedings and continued to abuse controlled substances. Further, despite being granted extensions to her improvement period over the objections of the DHHR and the guardian, petitioner did not successfully complete the same. Based on the evidence, the court found that there was no reasonable likelihood that petitioner could substantially correct the conditions of abuse and neglect in the near future and that termination of her rights was necessary for the children's welfare. As such, the court terminated petitioner's parental and custodial rights.[4] It is from the dispositional order that petitioner appeals.

The Court has previously established the following standard of review:

_____

[3]In regard to the positive screen for methamphetamine, the record shows that petitioner tested positive on an initial screen but the sample could not be tested at a laboratory for confirmation because of "excessive spill in the lab bag."

[4]C.W.'s father's parental and custodial rights were also terminated below. The permanency plan for C.W. is adoption in the current foster home, while the permanency plan for N.S. is to remain with the nonabusing father.

"Although conclusions of law reached by a circuit court are subject to *de novo* review, when an action, such as an abuse and neglect case, is tried upon the facts without a jury, the circuit court shall make a determination based upon the evidence and shall make findings of fact and conclusions of law as to whether such child is abused or neglected. These findings shall not be set aside by a reviewing court unless clearly erroneous. A finding is clearly erroneous when, although there is evidence to support the finding, the reviewing court on the entire evidence is left with the definite and firm conviction that a mistake has been committed. However, a reviewing court may not overturn a finding simply because it would have decided the case differently, and it must affirm a finding if the circuit court's account of the evidence is plausible in light of the record viewed in its entirety." Syl. Pt. 1, *In Interest of Tiffany Marie S.*, 196 W.Va. 223, 470 S.E.2d 177 (1996).

Syl. Pt. 1, *In re Cecil T.*, 228 W. Va. 89, 717 S.E.2d 873 (2011).

On appeal, petitioner argues that it was error to terminate her parental rights instead of imposing a less-restrictive dispositional alternative. In support of this argument, petitioner highlights evidence of her compliance with the terms and conditions of her improvement period, including her submission to drug screens, adult life skills education, parenting classes, and supervised visitation, among other factors. What petitioner ignores, however, is the overwhelming evidence that she was unsuccessful in remedying the conditions of abuse and neglect and, in fact, was incapable of doing so in the near future.

As set forth above, the circuit court considered extensive evidence of petitioner's noncompliance with services, including the fact that she continued to test positive for drugs throughout the proceedings and failed to enter substance abuse treatment as recommended. Even more important is the fact that just days after the circuit court extended her improvement period and explained that she needed to demonstrate compliance, petitioner was arrested on consecutive days for unrelated criminal conduct. Far from the compliance that the circuit court implored her to demonstrate, this evidenced a substantial deterioration in petitioner's circumstances. Most critical, however, is the fact that petitioner refused to acknowledge the basic circumstances that necessitated the children's removal, as evidenced by her social media posts about the DHHR "kidnapping" the children and her insistence that she had done nothing to warrant their removal. As this Court has held,

> [i]n order to remedy the abuse and/or neglect problem, the problem must first be acknowledged. Failure to acknowledge the existence of the problem, i.e., the truth of the basic allegation pertaining to the alleged abuse and neglect or the perpetrator of said abuse and neglect, results in making the problem untreatable.

*In re Timber M.*, 231 W. Va. 44, 55, 743 S.E.2d 352, 363 (2013) (citation omitted). Given that the circuit court heard evidence about petitioner's refusal to accept the truth of the allegations against her, we find that the conditions of abuse and neglect were untreatable. The fact that petitioner was unable to correct the conditions of abuse and neglect as a result of her refusal to acknowledge them was confirmed by the CPS supervisor who testified that, despite extensive services that began prior

4

to the petition's filing, petitioner simply had not made progress in her efforts to remedy these issues. As such, we find that petitioner is entitled to no relief in regard to her assertion that she successfully completed her improvement period.

This same evidence also supports the circuit court's termination of petitioner's parental and custodial rights, as it is clear that there was no reasonable likelihood that petitioner could substantially correct the conditions of abuse and neglect in the near future. While petitioner is correct that she did participate in some services, her refusal to acknowledge the conditions of abuse and neglect at issue, coupled with her ongoing substance abuse and criminal conduct, clearly supports the circuit court's finding in this regard. Further, the court found that termination of petitioner's rights was necessary for the children's welfare. Petitioner argues that there was no evidence presented to support this finding, but that argument is simply without merit. Given that petitioner allowed one child to suffer severe burns, failed to immediately seek medical treatment for those injuries, refused the appropriate treatment when she did eventually take the child to a doctor, failed to satisfactorily explain how the injuries occurred, and then refused to accept the reality that this conduct necessitated the children's removal overwhelmingly establishes that termination was necessary. According to West Virginia Code § 49-4-604(c)(6), circuit courts may terminate parental and custodial rights upon such findings. Further, as this Court has held,

> "[t]ermination of parental rights, the most drastic remedy under the statutory provision covering the disposition of neglected children, [West Virginia Code § 49-4-604] . . . may be employed without the use of intervening less restrictive alternatives when it is found that there is no reasonable likelihood under [West Virginia Code § 49-4-604(d)] . . . that conditions of neglect or abuse can be substantially corrected." Syllabus point 2, *In re R.J.M.*, 164 W.Va. 496, 266 S.E.2d 114 (1980).

Syl. Pt. 5, *In re Kristin Y.*, 227 W. Va. 558, 712 S.E.2d 55 (2011). Based on the overwhelming evidence in support of these determinations, we find no error in the circuit court's termination of petitioner's parental and custodial rights.

For the foregoing reasons, we find no error in the decision of the circuit court, and its December 21, 2020, order is hereby affirmed.

Affirmed.

**ISSUED**: June 3, 2021

**CONCURRED IN BY**:

Chief Justice Evan H. Jenkins
Justice Elizabeth D. Walker
Justice Tim Armstead
Justice John A. Hutchison
Justice William R. Wooton